## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DEMOCRACY FORWARD FOUNDATION,
P.O. Box 34553
Washington, D.C. 20043,

*Plaintiff*,

vs.

SOCIAL SECURITY ADMINISTRATION
6401 Security Boulevard
Baltimore, MD 21235

*Defendant*.

Case No. 26-cv-

---------------------------------------------------------------------------------------------------------

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Democracy Forward Foundation ("DFF") brings this action against Defendant Social Security Administration ("SSA") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Plaintiff alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1) because Defendant's headquarters and the agency records at issue are situated in this District.

**Parties**

3.      Plaintiff DFF is a national, not-for-profit organization that works to promote transparency and accountability in government, in part, by educating the public on government actions and policies.

4.      Defendant SSA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and is headquartered in this District. SSA is in possession, custody, and control of records, which are located in this jurisdiction and to which Plaintiff seeks access.

**Facts**

5.      On January 16, 2026, SSA publicly acknowledged that Department of Government Efficiency ("DOGE") affiliated employees at the agency had engaged in deeply concerning conduct.[1] Specifically, SSA indicated that one unidentified DOGE affiliate may have shared protected data with DOGE affiliates outside the agency, and an unidentified DOGE affiliate also signed a "Voter Data Agreement" with an "advocacy group."[2] SSA also acknowledged that DOGE affiliates had used an unapproved, third-party server—Cloudflare—to share SSA data.[3]

6.      SSA's acknowledgments left numerous open questions about the conduct of DOGE affiliates at SSA, how the agency discovered these improper actions, and what other harm DOGE affiliates may have caused. These revelations generated substantial press coverage and multiple Congressional inquiries.[4] Additionally, evidence recently emerged that DOGE affiliates

---

[1] Defendant's Notice of Corrections to the Record, *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. Jan. 16, 2026), https://perma.cc/U36U-U7NY.

[2] *Id*.

[3] *Id*.

[4] Meryl Kornfield & Elizabeth Dwoskin, *DOGE Member Took Social Security Data on a Thumb Drive*, Wash. Post (Mar. 10, 2026), https://perma.cc/JU7U-BUS8; Press Release, S. Comm. on Homeland Sec. & Gov't Affs. (Minority), *Peters Calls for Independent Investigation into DOGE Activities at SSA After New Disclosures Reveal Legal and Data Security Violations* (Mar. 10, 2026), https://perma.cc/9VCP-7DQB; Press Release, H. Comm. on Oversight & Gov't Reform (Minority), *Ranking Member Robert Garcia Expands DOGE Social Security Data Leak Investigation Following Explosive New Whistleblower Allegations* (Mar. 10, 2026), https://perma.cc/UQK9-AUXY; *Government Investigating New Claims DOGE Misused Social Security Data*, Rep. John B. Larson (Mar. 11, 2026), https://perma.cc/YW6R-ZRTW.

systematically used Signal and other non-official messaging systems to communicate about government business, particularly with other DOGE employees and officials.[5]

7.      On information and belief, DOGE-affiliated staff used non-official electronic messaging accounts to communicate about government business.

8.      The concerns raised by SSA's incomplete disclosures raise urgent questions about improper conduct at the agency that may affect the integrity of upcoming elections through the unlawful disclosure of protected personal information to outside entities and other unlawful, political conduct by SSA employees.

9.      To shed light on these matters of great public interest, DFF submitted the following FOIA requests for records related to DOGE affiliates' activities at SSA and the open questions concerning SSA's acknowledgements of improper conduct:

*Voter Data Agreement (2026-FOIA-00696)*

10.      On January 22, 2026, DFF sent a FOIA request to SSA seeking the following:

> A copy of the "Voter Data Agreement" that was signed by an SSA Department of Government Efficiency ("DOGE") team member and sent to an advocacy group on or about March 24, 2025, as well as emails exchanged to transmit this agreement.[6]

11.      DFF noted that SSA's public representations suggest that these records can be easily identified by SSA staff that recently conducted a review of this and related records, and that consultation with these knowledgeable staff would be part of an adequate search and would be an efficient means of identifying the responsive record.[7]

---

[5] Natalie Alms & Eric Katz, *Inside DOGE's Early Days of Pressure Campaigns, Rule Breaking and "Chaos,"* Gov't Exec. (Mar. 17, 2026), https://perma.cc/F4PQ-Y7AB.
[6] DFF's FOIA request cited Defendant's Notice of Corrections to the Record, *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. Jan. 16, 2026), https://perma.cc/U36U-U7NY ("Notice of Corrections to the Record").
[7] Here too, DFF's FOIA requested cited Defendant's Notice of Corrections to the Record.

12.     This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

13.     On January 22, 2026, SSA acknowledged this request and assigned it tracking number 2026-FOIA-00696.

14.     On March 4, 2026, SSA informed DFF that because of "unusual circumstances," specifically "the need for consultation with another agency," SSA needed to extend the time limit to respond to this request, citing 5 U.S.C. § 552(a)(6)(B)(iii). SSA informed DFF that it will receive further correspondence from SSA by no later than April 3, 2026.

15.     On March 18, 2026, DFF sent SSA a follow-up letter requesting accelerated processing in light of the public's need for the information.

16.     On March 19, 2026, SSA acknowledged DFF's follow-up letter.

17.     On March 20, 2026, DFF sent SSA a letter regarding the agency's failure to grant its fee waiver request. *See* Ex. 1.

18.     DFF has received no subsequent communication from SSA regarding this FOIA request.

*Hatch Act Referrals (2026-FOIA-00697)*

19.     On January 22, 2026, DFF sent a FOIA request to SSA and SSA Office of Inspector General seeking the following:

> A copy of the two Hatch Act referrals sent by SSA to the U.S. Office of Special Counsel in late December 2025, regarding two members of the SSA Department of Government Efficiency ("DOGE") team communicating with and signing a "Voter Data Agreement" with a political advocacy group.[8]

---

[8] DFF's FOIA request cited Defendant's Notice of Corrections to the Record.

20. This request sought records from December 10, 2025, until the date of the search.

21. This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

22. On January 22, 2026, SSA acknowledged this request and assigned it tracking number 2026-FOIA-00697.

23. On March 4, 2026, SSA informed DFF that because of "unusual circumstances," specifically "the need for consultation with another agency," SSA needed to extend the time limit to respond to this request, citing 5 U.S.C. § 552(a)(6)(B)(iii). SSA informed DFF that it will receive further correspondence from SSA by no later than April 6, 2026.

24. On March 18, 2026, DFF sent SSA a follow-up letter requesting accelerated processing in light of the public's need for the information.

25. On March 19, 2026, SSA acknowledged DFF's follow-up letter.

26. On March 20, 2026, DFF sent SSA a letter regarding the agency's failure to grant its fee waiver request. *See* Ex. 1.

27. DFF has received no subsequent communication from SSA regarding this FOIA request.

*SSA Officials' Communications with External Groups & Individuals – Part 1*
*(2026-FOIA-00698)*

28. On January 22, 2026, DFF sent a FOIA request to SSA seeking the following:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) **between** (A)

any SSA officials listed below and the following (B) external groups and individuals.

    A.  SSA Officials:
- a. Antonio Gracias;
- b. Payton Rehling;
- c. Jon Koval;
- d. Any other members of the SSA Department of Government Efficiency ("DOGE") team[9]

    B.  External groups and individuals:
- a. True the Vote (including, but not limited to @truethevote.org)
- b. Catherine Engelbrecht (including, but not limited to catherine@truethevote.org, CatherineE@truethevote.org)
- c. Gregg Phillips
- d. James Bopp
- e. Any representative or employee of the political advocacy group referenced in the SSA's recent representations through counsel to a federal court[10]

29. This request sought records from January 20, 2025, until the date of the search.

30. This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

31. On January 22, 2026, SSA acknowledged this request and assigned it tracking number 2026-FOIA-00698.

32. On March 9, 2026, SSA informed DFF that because of "unusual circumstances," specifically "the need for consultation with another agency," SSA needed to extend the time limit

---

[9] DFF's request stated: SSA officials who have recently conducted a review of SSA DOGE team communications can identify additional individuals with a reasonable amount of effort. *See* Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026), https://perma.cc/U36U-U7NY. The search should include the 11 individuals referenced in Dkt. No. 116 and presumably identified in Dkt. No. 118.

[10] Here too, DFF's request cited Defendant's Notice of Corrections to the Record.

to respond to this request, citing 5 U.S.C. § 552(a)(6)(B)(iii). SSA informed DFF that it will receive further correspondence from SSA by no later than April 8, 2026.

33.     On March 18, 2026, DFF sent SSA a follow-up letter requesting accelerated processing in light of the public's need for the information.

34.     On March 19, 2026, SSA acknowledged DFF's follow-up letter.

35.     On March 20, 2026, DFF sent SSA a letter regarding the agency's failure to grant its fee waiver request. *See* Ex. 1.

36.     DFF has received no subsequent communication from SSA regarding this FOIA request.

*Cloudflare Use (2026-FOIA-00699)*

37.     On January 22, 2026, DFF sent a FOIA request to SSA and SSA Office of Inspector General seeking the following:

> Records memorializing (such as memoranda, reports, or emails) the use
> of Cloudflare by DOGE affiliated staff in the recent review conducted
> by SSA employees referenced in the January 2026 court declaration.[11]

38.     This request sought records from March 1, 2025, until the date of the search.

39.     DFF noted that these records can be identified with a reasonable amount of effort by consulting knowledgeable agency staff who conducted the review.

40.     This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

41.     On January 22, 2026, SSA acknowledged this request and assigned it tracking number 2026-FOIA-00699.

---

[11] DFF's FOIA request cited Defendant's Notice of Corrections to the Record.

42.     On March 5, 2026, SSA informed DFF that because of "unusual circumstances," specifically "the need for consultation with another agency," SSA needed to extend the time limit to respond to this request, citing 5 U.S.C. § 552(a)(6)(B)(iii). SSA informed DFF that it will receive further correspondence from SSA by no later than April 6, 2026.

43.     On March 10, 2026, SSA sent DFF a substantively similar "unusual circumstances" letter that extended the timeframe for further correspondence from SSA to April 10, 2026.

44.     On March 18, 2026, DFF sent SSA a follow-up letter requesting accelerated processing in light of the public's need for the information.

45.     On March 19, 2026, SSA acknowledged DFF's follow-up letter.

46.     On March 20, 2026, DFF sent SSA a letter regarding the agency's failure to grant its fee waiver request. *See* Ex. 1.

47.     DFF has received no subsequent communication from SSA regarding this FOIA request.

*SSA Officials' Communications with External Groups & Individuals – Part 2*
*(2026-FOIA-00733)*

48.     On January 27, 2026, DFF sent a FOIA request to SSA seeking the following:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) between (A) any SSA officials listed below and the following (B) external groups and individuals.
>
>     A.  SSA Officials:
>         a.  Antonio Gracias;
>         b.  Payton Rehling;
>         c.  Jon Koval;
>         d.  Any other members of the SSA Department of

Government Efficiency ("DOGE") team[12]

    B.  External groups and individuals:
- a. We the People USA Alliance (including, but not limited to @wtpalliance.org)
- b. Election Integrity Network ("EIN") (including, but not limited to @whoscounting.us; @electionintegritynetwork.org, @electionintegrity.network)
- c. Cleta Mitchell, Chair of EIN (including, but not limited to @cletamitchell.com, @conservativepartnership.org)
- d. Citizen Election Research Center ("CERC") (including, but not limited to @citizenselectionresearchcenter.org)
- e. EagleAI Network (eagleai.pro)
- f. Virginia Institute for Public Policy (including, but not limited to virginiainstitute.org)
- g. Only Citizens Vote Coalition (@onlycitizensvotecoalition.com)
- h. Sharon P. Bemis, President of EIN
- i. Kerri Toloczko, EIN
- j. Sara Vieira, EIN
- k. Kathy Harms, EIN
- l. Ned Jones, EIN
- m. Julie Adams, Georgia Election Integrity Network
- n. North Carolina Election Integrity Team (@nceit.org)
- o. Patrice Johnson, Michigan Election Integrity Network

49.    This request sought records from January 20, 2025, until the date of the search.

50.    This request also sought a fee waiver on the grounds that "the release of the requested records is in the public interest," as defined by SSA regulation 20 C.F.R. § 402.85, "and not primarily in the commercial interest of the requester," *id*.

51.    On January 27, 2026, SSA acknowledged this request and assigned it tracking number 2026-FOIA-00733.

---

[12] DFF's request stated: SSA officials who have recently conducted a review of SSA DOGE team communications can identify additional individuals with a reasonable amount of effort. *See* Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026), https://perma.cc/U36U-U7NY. The search should include the 11 individuals referenced in Dkt. No. 116 and presumably identified in Dkt. No. 118.

52.     On March 10, 2026, SSA informed DFF that because of "unusual circumstances," specifically "the need for consultation with another agency," SSA needed to extend the time limit to respond to this request, citing 5 U.S.C. § 552(a)(6)(B)(iii). SSA informed DFF that it will receive further correspondence from SSA by no later than April 9, 2026.

53.     On March 18, 2026, DFF sent SSA a follow-up letter requesting accelerated processing in light of the public's need for the information.

54.     On March 19, 2026, SSA acknowledged DFF's follow-up letter.

55.     On March 20, 2026, DFF sent SSA a letter regarding the agency's failure to grant its fee waiver request. *See* Ex. 1.

56.     DFF has received no subsequent communication from SSA regarding this FOIA request.

*Exhaustion of Administrative Remedies*

57.     As of the date of this Complaint, Defendant has failed to notify DFF of determinations regarding the FOIA requests described herein and of DFF's requests for fee waivers described herein. Through Defendant's failure to respond within the time limits required by law, DFF has constructively exhausted administrative remedies.

**CLAIMS FOR RELIEF**

**Count 1 (Violation of FOIA, 5 U.S.C. § 552, Failure to Respond with Determinations)**

48.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

49.     By failing to respond to Plaintiff's FOIA requests with determinations within the statutorily mandated time period, Defendant has violated its duties under 5 U.S.C. § 552, including but not limited to, its duties to conduct a reasonable search for responsive records, to take

10

reasonable steps to release all nonexempt information, and to not withhold responsive records.

### Count 2 (Violation of FOIA and Implementing Regulations, 5 U.S.C. § 552, 20 C.F.R. § 402.85, Failure to Waive Fees)

50.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

51.     By failing to grant Plaintiff's requests for fee waivers where "the release of requested records is in the public interest" and "not primarily in the commercial interest of the requester" within the mandated time period, Defendant has violated its duties under 5 U.S.C. § 552 and its implementing regulations, 20 C.F.R. § 402.85.

52.     By failing to respond to Plaintiff's FOIA requests with determinations within the statutorily mandated time period, Defendant is precluded from assessing substantially all potential fees under FOIA. 5 U.S.C. § 522(a)(4), (6).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1.  Order Defendant to conduct adequate searches for any and all responsive records to Plaintiff's FOIA requests using search methods reasonably calculated to lead to discovery of all responsive records;

2.  Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3.  Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

4.  Order Defendant to grant Plaintiff's fee waiver requests;

12

5.     Enjoin Defendant from assessing all or a substantial portion of all possible fees in connection with processing Plaintiff's requests;

6.     Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

7.     Grant any other relief this Court deems appropriate.

Dated: March 23, 2025

Respectfully submitted,

/s/ *Daniel A. McGrath*

Daniel A. McGrath
(D. Md. Bar No. 31501)
Amy C. Vickery
(*pro hac vice* forthcoming)
Robin F. Thurston
(D. Md. Bar No. 31584)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
dmcgrath@democracyforward.org
avickery@democracyforward.org
rthurston@democracyforward.org

# Exhibit 1



March 20, 2026

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Constructive Denial of Fee Waiver Requests for FOIA Requests 2026-FOIA-00696, 2026-FOIA-00697, 2026-FOIA-00698, 2026-FOIA-00699 & 2026-FOIA-00733**

To FOIA Officials:

Democracy Forward Foundation ("DFF") writes to follow-up on the Social Security Administration's ("SSA") constructive denial of DFF's fee waiver requests in connection with FOIA requests 2026-FOIA-00696, 2026-FOIA-00697, 2026-FOIA-00698, 2026-FOIA-00699, and 2026-FOIA-00733. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (applying 5 U.S.C. § 552(a)(6)(C) to fee waiver requests). DFF writes to reiterate that a full fee waiver is merited for these requests, and asks that SSA grant the requested fee waivers without need for court intervention on the issue.

## I.    Background

### A.    DFF's FOIA Requests

On January 22, 2026, and on January 27, 2026 in the case of Request 2026-FOIA-00733, DFF submitted FOIA requests seeking the following:

**2026-FOIA-00696**

> A copy of the "Voter Data Agreement" that was signed by an SSA Department of Government Efficiency ("DOGE") team member and sent to an advocacy group on or about March 24, 2025, as well as emails exchanged to transmit this agreement. [footnote omitted]

> Democracy Forward Foundation expects this request for a small subset of readily identifiable records regarding a high-profile matter will be assigned to the simple processing track and processed expeditiously. SSA's public representations suggest that these records can be easily identified by SSA staff that recently conducted a review of this and related records. Consultation with these knowledgeable staff would be part of an adequate search and would be an efficient means of identifying the responsive record.  [footnote omitted]



**2026-FOIA-00697**

A copy of the two Hatch Act referrals sent by SSA to the U.S. Office of Special Counsel in late December 2025, regarding two members of the SSA Department of Government Efficiency ("DOGE") team communicating with and signing a "Voter Data Agreement" with a political advocacy group. [footnote omitted]

This request seeks records from December 10, 2025 until the date of the search.

Democracy Forward Foundation expects this request for two readily identifiable records regarding a high-profile matter will be assigned to the simple processing track and processed expeditiously.

**2026-FOIA-00698**

All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) between (A) any SSA officials listed below and the following (B) external groups and individuals.

A.   SSA Officials:
   a.   Antonio Gracias
   b.   Payton Rehling
   c.   Jon Koval
   d.   Any other members of the SSA Department of Government Efficiency ("DOGE") team [footnote omitted]

B.   External groups and individuals:
   a.   True the Vote (including, but not limited to @truethevote.org)
   b.   Catherine Engelbrecht (including, but not limited to catherine@truethevote.org, CatherineE@truethevote.org)
   c.   Gregg Phillips
   d.   James Bopp
   e.   Any representative or employee of the political advocacy group referenced in the SSA's recent representations through counsel to a federal court  [footnote omitted]

This request seeks records from January 20, 2025 until the date of the search.

**2026-FOIA-00699**

Records memorializing (such as memoranda, reports, or emails) the use of Cloudflare by DOGE affiliated staff in the recent review conducted by SSA employees referenced in the January 2026 court declaration.

This request seeks records from March 1, 2025 until the date of the search. These records can be identified with a reasonable amount of effort by consulting knowledgeable agency staff who conducted the review.

**2026-FOIA-00733**

All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) between (A) any SSA officials listed below and the following (B) external groups and individuals.

A.    SSA Officials:
   a.    Antonio Gracias
   b.    Payton Rehling
   c.    Jon Koval
   d.    Any other members of the SSA Department of Government Efficiency ("DOGE") team [footnote omitted]

B.    External groups and individuals:
   a.    We the People USA Alliance (including, but not limited to @wtpalliance.org)
   b.    Election Integrity Network ("EIN") (including, but not limited to @whoscounting.us; @electionintegritynetwork.org, @electionintegrity.network)
   c.    Cleta Mitchell, Chair of EIN (including, but not limited to @cletamitchell.com, @conservativepartnership.org)
   d.    Citizen Election Research Center ("CERC") (including, but not limited to @citizenselectionresearchcenter.org)
   e.    EagleAI Network (eagleai.pro)
   f.    Virginia Institute for Public Policy (including, but not limited to virginiainstitute.org)
   g.    Only Citizens Vote Coalition (@onlycitizensvotecoalition.com)
   h.    Sharon P. Bemis, President of EIN
   i.    Kerri Toloczko, EIN
   j.    Sara Vieira, EIN
   k.    Kathy Harms, EIN
   l.    Ned Jones, EIN
   m.    Julie Adams, Georgia Election Integrity Network
   n.    North Carolina Election Integrity Team (@nceit.org)



> o. Patrice Johnson, Michigan Election Integrity Network

This request seeks records from January 20, 2025 until the date of the search.

DFF requested a waiver of all fees associated with processing each of these records requests on the grounds that "disclosure of the information [DFF seeks] is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

### B. SSA's Constructive Denial

Citing 5 U.S.C. § 552(a)(6)(B)(iii), SSA informed DFF that because of "unusual circumstances"—specifically "the need for consultation with another agency"—SSA needed to extend the time limit to respond to each of DFF's FOIA requests. In so extending, SSA did not address any of DFF's fee waiver requests. Even assuming arguendo that the "unusual circumstances" extension of ten working days applies to DFF's fee waiver requests, SSA's deadline to respond to DFF's fee waiver request expired on March 11, 2026, for Request 2026-FOIA-00733, and on March 6, 2026 for DFF's remaining FOIA requests described herein. *See Judicial Watch*, 326 F.3d at 1310.

### II. DFF's FOIA Requests Merit Full Fee Waivers.

Given the constructive denial of DFF's fee waiver requests, DFF is entitled to seek judicial review on the matter. *See Judicial Watch*, 326 F.3d at 1310. To avoid the need for court intervention on this issue, DFF reiterates its request that SSA waive all fees associated with processing FOIA requests 2026-FOIA-00696, 2026-FOIA-00697, 2026-FOIA-00698, 2026-FOIA-00699, and 2026-FOIA-00733. DFF incorporates by reference the reasoning and support in its original fee waiver requests and reiterates that fee waivers are merited for these FOIA requests for the reasons stated below.

SSA's regulations provide for documents to be furnished to requesters at no fee when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85(a)-(b). When assessing whether disclosure of the requested information is in the "public interest," your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(b)(2). Considering these factors, DFF's FOIA requests merit a fee waiver.

First, the requested records pertain to the Federal government's operations and activities, *see id.* § 402.85(b)(2)(i), because the matter at hand involves data in possession of the Federal government and activities undertaken by DOGE employees at SSA that potentially seriously jeopardized that data and violated federal law prohibiting partisan activity. These records involve a "Voter Data Agreement" to which the Federal government may have been a party, alongside a political advocacy group; Hatch Act complaints filed as a result of working with a political

advocacy group on matters related to voter data; communications with external parties that may have been privy to sensitive Federal government data; decisions to upload sensitive data in Federal custody to unsecured servers not approved for handling the data; and communications with external parties that may have been unlawfully granted access to sensitive Federal government data. Although in SSA's own admission these activities *should not* have been Federal government operations and activities—given the agency itself filed the Hatch Act complaints and indicated that the "Voter Data Agreement" "was not reviewed or approved through the agency's data exchange procedures"[1]—they nonetheless took place and, thus, impact core Federal government operations and activities.

Second, the requested records will reveal meaningful information about government operations and/or activities not already known to the public. *See* 20 § 402.85(b)(2)(ii). It remains an open question which external political advocacy group engaged with DOGE SSA team members[2]—and our requests for the "Voter Data Agreement," Hatch Act complaints, and communications between DOGE SSA team members and external political advocacy groups would provide meaningful information to the public about which outside entities are potentially influencing core government operations related to voter data; while the requests related to Cloudflare will help the public better understand the implications of a data breach to a server that SSA itself has stated is not approved for storing SSA data.

Third, the contribution of DFF's request to the public understanding of Social Security will be significant, *see* 20 § 402.85(b)(2)(iii), because Social Security holds data for more than 300 million Americans[3] who deserve to know how that data is being shared outside the agency, whether it is being used by an external organization to attempt to overturn election results, and what the implications of potential data breaches on unapproved servers may be. DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how their data has been handled at a critical Federal government agency.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of numerous news reports.[4] In addition, DFF uses

---

[1] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf.

[2] Yunior Rivas, *Did DOGE sign a 'voter data agreement' with election deniers True the Vote?,* Democracy Docket (Jan. 21, 2026), https://www.democracydocket.com/news-alerts/did-doge-sign-a-voter-data-agreement-with-election-deniers-true-the-vote/.

[3] *DOGE shared Social Security data to unauthorized server, according to court filing*, Office of Rep. John B. Larson (Jan. 21, 2026), https://larson.house.gov/media-center/in-the-news/doge-shared-social-security-data-unauthorized-server-according-court.

[4] *See*, *e.g.*, Bethany McLean, *The Man Behind Trump's Attack on the Fed*, The Free Press (Jan. 20, 2026), https://www.thefp.com/p/the-man-behind-trumps-fed-attack; Chris Prentice & Marisa Taylor, *Exclusive: Trump appointee inspired by conservative media outlet to push for probe of Democratic congressman*, Reuters (Dec. 22, 2025), https://www.reuters.com/business/finance/trump-appointee-inspired-by-conservative-media-outlet-push-

information gathered through FOIA to educate the public via numerous other means—including press releases, reports, blog posts, and social media.[5] DFF's social media platforms reach hundreds of thousands[6] of people—and its website in 2025 earned 3.5 million views.

Finally, disclosure of the requested information is not primarily in the commercial interest of DFF.

---

probe-democratic-2025-12-20/; Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson-want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on-policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero-tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california-immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over-bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback-she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump-equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house-keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit-college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump-administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump-adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan-zinke-interior-department-helicopters-wildfires-757857.

[5] *Democracy Forward's Investigations in the First Year of the Trump-Vance Administration*, Democracy Forward (Mar. 13, 2026), https://democracyforward.org/work/research/demanding-accountability/; *Using AI for Governance and Personnel Decisions*, Democracy Forward (updated February 13, 2026), https://democracyforward.org/work/investigations/using-ai-for-governance-and-personnel-decisions-without-proper-guardrails/; *Demanding Accountability:* Democracy Forward (@democracyforward.org), *Thread regarding FOIAs about ICE facial recognition* (Feb. 13, 2026), https://bsky.app/profile/democracyforward.org/post/3meqqefmoic2s; *Democracy Forward Obtains Records Regarding FHFA's Politicized Investigations of Public Officials*, Democracy Forward (Oct. 30, 2025), https://democracyforward.org/news/press-releases/pulte-lawsuit/.

[6] Democracy Forward currently has approximately 105,500 followers on Bluesky (https://bsky.app/profile/democracyforward.org, last visited March 17, 2026), 106,000 followers on Instagram (https://www.instagram.com/democracyforward/, last visited March 17, 2026), and 17,300 followers on X  (https://x.com/DemocracyFwd, last visited March 17, 2026).



*See* 20 § 402.85(b). DFF is a 501(c)(3) organization, and intends to share any records received from SSA via these FOIA requests with the public at no cost. Indeed, DFF has a demonstrated history of doing so. *See, e.g.*, Democracy Forward (@democracy_forward), *Our lawsuit just proved the Trump-Vance administration and DOGE wrong about Social Security fraud* (Dec. 16, 2025), Instagram, https://perma.cc/8VWS-MVWC?type=standard.

###   III.    Conclusion

Waiving fees associated with DFF's FOIA Requests 2026-FOIA-00696, 2026-FOIA-00697, 2026-FOIA-00698, 2026-FOIA-00699, and 2026-FOIA-00733 will further the "public interest." DFF reiterates its request that SSA grant a full waiver of any fees associated with processing these FOIA requests without need for court intervention on the issue.

/s/ Skye Perryman

Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

# Appendix
# Submitted Requests

# DEMOCRACY FORWARD▶

January 22, 2026

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward Foundation submits this request for records.

## *Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration ("SSA") produce the following within twenty (20) business days:

> A copy of the "Voter Data Agreement" that was signed by an SSA Department of Government Efficiency ("DOGE") team member and sent to an advocacy group on or about March 24, 2025, as well as emails exchanged to transmit this agreement.[1]

Democracy Forward Foundation expects this request for a small subset of readily identifiable records regarding a high-profile matter will be assigned to the simple processing track and processed expeditiously. SSA's public representations suggest that these records can be easily identified by SSA staff that recently conducted a review of this and related records. Consultation with these knowledgeable staff would be part of an adequate search and would be an efficient means of identifying the responsive record.[2]

## *Scope of Search*

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be  disclosed in their

---

[1] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf.
[2] *Id.*

DFF-SSA-26-0106

entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S.  Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

***Request for Fee Waiver***

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

(i) The requested records pertain to the Federal government's operations and activities because they concern the potential, noncompliant distribution of personal data stored at SSA to an

outside, unauthorized political advocacy group. On January 16, 2026, SSA submitted a correction to the record[3] for the ongoing case, *American Federation of State v. Social Security Administration*, No. 1:2025cv00596, stating that a recent internal review revealed that two members of SSA's DOGE team had communicated with and sent a Voter Data Agreement to an external political advocacy group. Email communications suggested that the group intended to "overturn election results in certain states" by matching their voter rolls with SSA data.

(ii) Disclosure of the requested records would reveal meaningful information about government operations not already known to the public because it is yet unclear whether the employees had accessed SSA data to match voter rolls and if data was indeed shared externally. Therefore, the disclosure of the requested records, which are directly related to this issue and not attenuated connections, is necessary to shed light on these events. Given the gravity and sensitivity of sharing private data, the public has the right to view these documents to understand how the government has handled their data.

(iii) The contribution to public understanding would be significant because the purported activity raises serious issues of government integrity. First, the collaboration between government officials with a political advocacy group poses violations of the Hatch Act. Second, these actions potentially constitute breaches to Americans' sensitive data, including, but not limited to bank accounts, credit cards, loans, benefits, and personal identification. Third, the possibility that SSA officials had taken these actions while the agency was under court order at the time to refrain from such activities is a serious infraction of the government's integrity and risks weakening the public's trust in their own government.

DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration is handling their sensitive data.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of  government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[4]

---

[3] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf

[4] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy;

Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### *Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

---

Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

DFF-SSA-26-0106

*/s/ Skye Perryman*

Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

DFF-SSA-26-0106

# DEMOCRACY
# FORWARD▶

January 22, 2026

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward
Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration
("SSA") and the Social Security Administration Office of the Inspector General ("SSA OIG")
produce the following within twenty (20) business days:

> A copy of the two Hatch Act referrals sent by SSA to the U.S. Office of Special
> Counsel in late December 2025, regarding two members of the SSA Department of
> Government Efficiency ("DOGE") team communicating with and signing a "Voter Data
> Agreement" with a political advocacy group.[1]

This request seeks records from December 10, 2025 until the date of the search.

Democracy Forward Foundation expects this request for two readily identifiable records
regarding a high-profile matter will be assigned to the simple processing track and processed
expeditiously.

---

[1] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v.
Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026).
https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf

DFF-SSA-26-0107

*Scope of Search*

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

*Request for Fee Waiver*

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee

DFF-SSA-26-0107

waiver.

(i) The requested records pertain to the Federal government's operations and activities because they concern the potential, noncompliant distribution of personal data stored at SSA to an outside, unauthorized political advocacy group. On January 16, 2026, SSA submitted a correction to the record[2] for the ongoing case, *American Federation of State v. Social Security Administration*, No. 1:2025cv00596, stating that a recent internal review revealed that two members of SSA's DOGE team had communicated with and sent a Voter Data Agreement to an external political advocacy group. Email communications suggested that the group intended to "overturn election results in certain states" by matching their voter rolls with SSA data.

(ii) Disclosure of the requested records would reveal meaningful information about government operations not already known to the public because it is yet unclear whether the employees had accessed SSA data to match voter rolls and if data was indeed shared externally. Therefore, the disclosure of the requested records, which are directly related to this issue and not attenuated connections, is necessary to shed light on these events. Given the gravity and sensitivity of sharing private data, the public has the right to view these documents to understand how the government has handled their data.

(iii) The contribution to public understanding would be significant because the purported activity raises serious issues of government integrity. First, the collaboration between government officials with a political advocacy group poses violations of the Hatch Act. Second, these actions potentially constitute breaches to Americans' sensitive data, including, but not limited to bank accounts, credit cards, loans, benefits, and personal identification. Third, the possibility that SSA officials had taken these actions while the agency was under court order at the time to refrain from such activities is a serious infraction of the government's integrity and risks weakening the public's trust in their own government.

DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration is handling their sensitive data.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed,

---

[2] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf

DFF-SSA-26-0107

records received by DFF have previously formed the basis of news reports.[3]

Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

***Conclusion***

---

[3] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy;
 Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

DFF-SSA-26-0107

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

DFF-SSA-26-0107

# DEMOCRACY FORWARD▸

January 22, 2026

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration ("SSA") produce the following within twenty (20) business days:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) between (A) any SSA officials listed below and the following (B) external groups and individuals.
>
> A. SSA Officials:
>     a. Antonio Gracias
>     b. Payton Rehling
>     c. Jon Koval
>     d. Any other members of the SSA Department of Government Efficiency ("DOGE") team[1]

---

[1] SSA officials who have recently conducted a review of SSA DOGE team communications can identify additional individuals with a reasonable amount of effort. *See* Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf. The search should include the 11 individuals referenced in Dkt. No. 116 and presumably identified in Dkt. No. 118.

DFF-SSA-26-0109

B.  External groups and individuals:
  a.  True the Vote (including, but not limited to @truethevote.org)
  b.  Catherine Engelbrecht (including, but not limited to catherine@truethevote.org, CatherineE@truethevote.org)
  c.  Gregg Phillips
  d.  James Bopp
  e.  Any representative or employee of the political advocacy group referenced in the SSA's recent representations through counsel to a federal court[2]

This request seeks records from January 20, 2025 until the date of the search.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

---

[2] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf.

DFF-SSA-26-0109

*Request for Fee Waiver*

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

(i) The requested records pertain to the Federal government's operations and activities because they concern the potential, noncompliant distribution of personal data stored at SSA to an outside, unauthorized political advocacy group. On January 16, 2026, SSA submitted a correction to the record[3] for the ongoing case, *American Federation of State v. Social Security Administration*, No. 1:2025cv00596, stating that a recent internal review revealed that two members of SSA's DOGE team had communicated with and sent a Voter Data Agreement to an external political advocacy group. Email communications suggested that the group intended to "overturn election results in certain states" by matching their voter rolls with SSA data.

(ii) Disclosure of the requested records would reveal meaningful information about government operations not already known to the public because it is yet unclear whether the employees had accessed SSA data to match voter rolls and if data was indeed shared externally. Therefore, the disclosure of the requested records, which are directly related to this issue and not attenuated connections, is necessary to shed light on these events. Given the gravity and sensitivity of sharing private data, the public has the right to view these documents to understand how the government has handled their data.

(iii) The contribution to public understanding would be significant because the purported activity raises serious issues of government integrity. First, the collaboration between government officials with a political advocacy group poses violations of the Hatch Act. Second, these actions potentially constitute breaches to Americans' sensitive data, including, but not limited to bank accounts, credit cards, loans, benefits, and personal identification.

---

[3] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf

Third, the possibility that SSA officials had taken these actions while the agency was under court order at the time to refrain from such activities is a serious infraction of the government's integrity and risks weakening the public's trust in their own government.

DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration is handling their sensitive data.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[4]

---

[4] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy; Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire*

DFF-SSA-26-0109

Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### *Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

*preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

# DEMOCRACY FORWARD▶

January 22, 2026

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward Foundation submits this request for records.

*Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration ("SSA") and the Social Security Administration Office of the Inspector General ("SSA OIG") produce the following within twenty (20) business days:

> Records memorializing (such as memoranda, reports, or emails) the use of Cloudflare by DOGE affiliated staff in the recent review conducted by SSA employees referenced in the January 2026 court declaration.[1]

This request seeks records from March 1, 2025 until the date of the search. These records can be identified with a reasonable amount of effort by consulting knowledgeable agency staff who conducted the review.

*Scope of Search*

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that

---

[1] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf.

DFF-SSA-26-0110

you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

***Request for Fee Waiver***

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

(i) The requested records pertain to the Federal government's operations and activities because they concern the potential, noncompliant distribution of personal data stored at SSA to an outside, unauthorized political advocacy group. On January 16, 2026, SSA submitted a

DFF-SSA-26-0110

correction to the record[2] for the ongoing case, *American Federation of State v. Social Security Administration*, No. 1:2025cv00596, stating that a recent internal review revealed that two members of SSA's DOGE team had communicated with and sent a Voter Data Agreement to an external political advocacy group. Email communications suggested that the group intended to "overturn election results in certain states" by matching their voter rolls with SSA data.

(ii) Disclosure of the requested records would reveal meaningful information about government operations not already known to the public because it is yet unclear whether the employees had accessed SSA data to match voter rolls and if data was indeed shared externally. Therefore, the disclosure of the requested records, which are directly related to this issue and not attenuated connections, is necessary to shed light on these events. Given the gravity and sensitivity of sharing private data, the public has the right to view these documents to understand how the government has handled their data.

(iii) The contribution to public understanding would be significant because the purported activity raises serious issues of government integrity. First, the collaboration between government officials with a political advocacy group poses violations of the Hatch Act. Second, these actions potentially constitute breaches to Americans' sensitive data, including, but not limited to bank accounts, credit cards, loans, benefits, and personal identification. Third, the possibility that SSA officials had taken these actions while the agency was under court order at the time to refrain from such activities is a serious infraction of the government's integrity and risks weakening the public's trust in their own government.

DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration is handling their sensitive data.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of  government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[3]

---

[2] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf

[3] *See, e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy;
 Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the*

DFF-SSA-26-0110

Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### *Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

---

*Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018), https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

DFF-SSA-26-0110

_/s/ Skye Perryman_
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

DFF-SSA-26-0110

# DEMOCRACY FORWARD ➤

January 27, 2026

**VIA ELECTRONIC DELIVERY**

Social Security Administration
Office of Privacy and Disclosure
G-401 WHR 6401 Security Boulevard
Baltimore, Maryland 21235
Via online portal

**Re: Freedom of Information Action Request**

Dear FOIA Officer:

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, Democracy Forward Foundation submits this request for records.

### *Records Requested*

Democracy Forward Foundation ("DFF") requests that the Social Security Administration ("SSA") produce the following within twenty (20) business days:

> All electronic communications (including emails, email attachments, complete email chains, calendar invitations, or attachments thereto, as well as any text messages or messages sent on messaging platforms such as Slack, Microsoft Teams, WhatsApp, Signal, or GChat) between (A) any SSA officials listed below and the following (B) external groups and individuals.
>
>   A. SSA Officials:
>     a. Antonio Gracias
>     b. Payton Rehling
>     c. Jon Koval
>     d. Any other members of the SSA Department of Government Efficiency ("DOGE") team[1]

---

[1] SSA officials who have recently conducted a review of SSA DOGE team communications can identify additional individuals with a reasonable amount of effort. *See* Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf. The search should include the 11 individuals referenced in Dkt. No. 116 and presumably identified in Dkt. No. 118.

DFF-SSA-26-0170

B.  External groups and individuals:
   a. We the People USA Alliance (including, but not limited to @wtpalliance.org)
   b. Election Integrity Network ("EIN") (including, but not limited to @whoscounting.us; @electionintegritynetwork.org, @electionintegrity.network)
   c. Cleta Mitchell, Chair of EIN (including, but not limited to @cletamitchell.com, @conservativepartnership.org)
   d. Citizen Election Research Center ("CERC") (including, but not limited to @citizenselectionresearchcenter.org)
   e. EagleAI Network (eagleai.pro)
   f. Virginia Institute for Public Policy (including, but not limited to virginiainstitute.org)
   g. Only Citizens Vote Coalition (@onlycitizensvotecoalition.com)
   h. Sharon P. Bemis, President of EIN
   i. Kerri Toloczko, EIN
   j. Sara Vieira, EIN
   k. Kathy Harms, EIN
   l. Ned Jones, EIN
   m. Julie Adams, Georgia Election Integrity Network
   n. North Carolina Election Integrity Team (@nceit.org)
   o. Patrice Johnson, Michigan Election Integrity Network

This request seeks records from January 20, 2025 until the date of the search.

***Scope of Search***

FOIA requires agencies to disclose information, with only limited exceptions. 5 U.S.C. § 552(a)(8)(A). In the event that any of the requested documents cannot be disclosed in their entirety, we request that you release any material that can be reasonably segregated. *See* 5 U.S.C. § 552(b). Should any documents or portions of documents be withheld, we further request that you state with specificity the description of the document to be withheld and the legal and factual grounds for withholding any documents or portions thereof in an index, as required by *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Should any document include both disclosable and non-disclosable material that cannot reasonably be segregated, we request that you describe what proportion of the information in a document is non-disclosable and how that information is dispersed throughout the document. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

If requested records are located in, or originated in, another agency, department, office

DFF-SSA-26-0170

installation or bureau, please refer this request or any relevant portion of this request to the appropriate entity.

To the extent that the records are readily reproducible in an electronic format, we would prefer to receive the records in that format. However, if certain records are not available in that format, we are willing to accept the best available copy of each such record.

Please respond to this request in writing within 20 working days as required under 5 U.S.C. § 552(a)(6)(A)(i). If all of the requested documents are not available within that time period, we request that you provide us with all requested documents or portions of documents that are available within that time period.

### *Request for Fee Waiver*

Pursuant to 42 U.S.C. § 1306 and your agency's regulations, DFF requests a waiver of all fees associated with processing records for this request. Your regulations provide for documents to be furnished to requesters at no fee or reduced fees when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 20 C.F.R. § 402.85.

When assessing a request for a fee waiver, your agency considers the following factors: (i) how the records pertain to the Federal government's operations or activities; (ii) whether disclosure would reveal any meaningful information about government operations or activities not already known to the public; and (iii) whether the contribution to public understanding would be significant. *Id.* § 402.85(2). Considering these factors, DFF's request merits a fee waiver.

(i) The requested records pertain to the Federal government's operations and activities because they concern the potential, noncompliant distribution of personal data stored at SSA to an outside, unauthorized political advocacy group. On January 16, 2026, SSA submitted a correction to the record[2] for the ongoing case, *American Federation of State v. Social Security Administration*, No. 1:2025cv00596, stating that a recent internal review revealed that two members of SSA's DOGE team had communicated with and sent a Voter Data Agreement to an external political advocacy group. Email communications suggested that the group intended to "overturn election results in certain states" by matching their voter rolls with SSA data.

(ii) Disclosure of the requested records would reveal meaningful information about

---

[2] Defendant's Notice of Corrections to the Record, *American Federation of State, County & Municipal Employees v. Social Security Administration*, No. 1:25-cv-00596, Dkt. No. 197 (D. Md. filed Jan. 16, 2026). https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf

DFF-SSA-26-0170

government operations not already known to the public because it is yet unclear whether the employees had accessed SSA data to match voter rolls and if data was indeed shared externally. Therefore, the disclosure of the requested records, which are directly related to this issue and not attenuated connections, is necessary to shed light on these events. Given the gravity and sensitivity of sharing private data, the public has the right to view these documents to understand how the government has handled their data.

(iii) The contribution to public understanding would be significant because the purported activity raises serious issues of government integrity. First, the collaboration between government officials with a political advocacy group poses violations of the Hatch Act. Second, these actions potentially constitute breaches to Americans' sensitive data, including, but not limited to bank accounts, credit cards, loans, benefits, and personal identification. Third, the possibility that SSA officials had taken these actions while the agency was under court order at the time to refrain from such activities is a serious infraction of the government's integrity and risks weakening the public's trust in their own government.

DFF intends to publicize records DFF receives to contribute significantly to the public's understanding of how this Administration is handling their sensitive data.

To this latter point, DFF has a demonstrated ability to disseminate information of public interest requested through FOIA. When DFF obtains materials through FOIA requests that are of significant public interest, DFF's communications staff regularly works to ensure that these materials and their contents are featured in press articles educating the public about the operation of  government; many articles feature additional commentary and analysis from DFF staff about those materials and their relevance to policy issues of public interest. Indeed, records received by DFF have previously formed the basis of news reports.[3]

---

[3] *See*, *e.g.*, Alexander Nazaryan, *Why did right-wing troll Charles C. Johnson meet with Commerce Secretary Wilbur Ross?*, Yahoo News (May 14, 2019), https://news.yahoo.com/why-did-rightwing-troll-charles-c-johnson want-to-meet-with-commerce-secretary-wilbur-ross-090000636.html; Derek Kravitz and Jack Gillum, *"Happy to Do It": Emails Show Current FAA Chief Coordinated With Ex-Lobbyist Colleagues on Policy*, ProPublica (Mar. 27, 2019), https://www.propublica.org/article/dan-elwell-current-faa-chief-coordinated-with-ex-lobbyist-colleagues-on policy;
 Hamid Aleaziz, *Emails Show US Border Officials Didn't Receive "Zero Tolerance" Guidance Until After the Policy Was Enacted*, Buzzfeed News (Feb. 28, 2019), https://www.buzzfeednews.com/article/hamedaleaziz/zero tolerance-policy-guidance-dhs-family-separation; Jonathan Cohn and Jeffrey Young, *Emails Show Trump Administration Was Told Obamacare Ad Cuts Could Hurt Enrollment*, Huffpost (Dec. 17, 2018), https://www.huffingtonpost.com/entry/trump-verma-obamacare-advertising-cut_us_5c115061e4b084b082ff8dba; Madison Pauly, *When the Biggest Prison Company Complained About a California Sanctuary Law, ICE Listened*, Mother Jones (Dec. 7, 2018), https://www.motherjones.com/politics/2018/12/geo-memo-private-prison-california immigration/; Eliza Rellman, *'Just answer the question and kill this story': In internal emails, Heather Nauert criticized Rex Tillerson's refusal to deny reports that he called Trump a 'moron,'* Business Insider (Nov. 2, 2018), https://www.businessinsider.com/heather-nauert-rex-tillerson-trump-moron-2018-11; Rebecca Klein, *Lawsuit Accuses Betsy DeVos And Her Deputies Of Being Motivated By Sexism*, HuffPost (Oct. 31, 2018), https://m.huffpost.com/us/entry/us_5bd9ff6ee4b01abe6a1ad4a9; Nick Penzenstadler, *A year after Vegas shooting, ATF emails reveal blame, alarm over bump stocks*, USA Today (Oct. 1, 2018),

DFF-SSA-26-0170

Democracy Forward Foundation is not filing this request to further any commercial interest, and any information obtained by Democracy Forward Foundation as a result of this request and disclosed will be disclosed at no cost.

If the request for a waiver is denied, we are willing to pay all reasonable fees incurred for searching and duplicating records in responding to this request, up to $100. If the costs of responding to this request should exceed that amount, please contact us before incurring costs exceeding that amount.

### *Conclusion*

If you need clarification as to the scope of the request, have any questions, or foresee any obstacles to releasing fully the requested records within 20 business days, please contact me as soon as possible at foia@democracyforward.org.

We appreciate your assistance and look forward to your prompt response.

Sincerely,

*/s/ Skye Perryman*
Skye Perryman
President & CEO
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043

---

https://www.usatoday.com/story/news/2018/10/01/year-after-vegas-shooting-atf-emails-reveal-blame-alarm-over bump-stocks/1432137002/; Jessica Kwong, *Ivanka Trump was more than complicit in Obama equal pay rollback she had a hand in it, watchdog alleges*, Newsweek (Aug. 29, 2018), https://www.newsweek.com/ivanka-trump equal-pay-complicit-obama-1093833; Vera Bergengruen, *New Emails Show What Happens When The Pentagon Has To Scramble To Catch Up To Trump*, Buzzfeed News (July 25, 2018), https://www.buzzfeednews.com/article/verabergengruen/these-emails-show-what-happens-when-the-white-house keeps; Erin Dooley, *Exclusive: Former for-profit college executive shaped Education Department policy that could benefit former employers: Documents*, ABC News (May 15, 2017), https://abcnews.go.com/US/exclusive-profit college-executive-shaped-education-department-policy/story?id=55108981; Heidi Przybyla, *Notes, emails reveal Trump appointees' war to end HHS teen pregnancy program*, NBC News (Mar. 20, 2018), https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen pregnancy-n857686; Dominic Holden, *Documents Show The Trump Administration Approved Bump Stocks Before It Opposed Them*, Buzzfeed News (Mar. 22, 2018), https://www.buzzfeednews.com/article/dominicholden/trump administration-bump-stocks; Bernard Condon, *Trump Advisor Denies He Cheered End of Tunnel Funding Deal*, Associated Press (Feb. 13, 2018), *available at* https://www.usnews.com/news/business/articles/2018-02-13/trump adviser-denies-he-cheered-end-of-tunnel-funding-deal; Celeste Katz, *Interior Department tapped wildfire preparedness funds for Ryan Zinke helicopter tour*, Newsweek (Dec. 29, 2017), https://www.newsweek.com/ryan zinke-interior-department-helicopters-wildfires-757857.

DFF-SSA-26-0170